UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CEDAR LODGE PLANTATION, LLC,
ET AL.

CIVIL ACTION

VERSUS

NO. 13-129-BAJ-EWD

CSHV FAIRWAY VIEW I, LLC,
ET AL.

**RULING ON MOTION TO STRIKE WITNESSES**

Before the Court is a Motion to Strike Witnesses ("Motion to Strike")[1] filed by Sewer

Treatment Specialists ("STS").  Plaintiffs, Cedar Lodge Plantation, LLC and Phillips C. Witter,

individually and on behalf of all similarly situated persons (collectively, "Plaintiff") has filed an

opposition.[2]  STS and Defendants CSHV Fairway View I, LLC, CSHV Fairway View II, LLC,

and Campus Advantage, Inc. (collectively, "Fairway View") have filed replies in support of STS's

Motion to Strike,[3] to which Plaintiff has filed an omnibus surreply.[4]  For the reasons set forth

herein, the Motion to Strike[5] is **DENIED**.

## I.      Background

Plaintiff alleges that STS and other defendants are liable for "the continuous unpermitted

discharge of harmful or hazardous substances, pollutants and/or contaminants, including but not

limited to raw sewage on Plaintiffs' property."[6] Plaintiff alleges that it owns or has owned property

---

[1] R. Doc. 105.

[2] R. Doc. 107.  Although Plaintiff filed its opposition as "Cedar Lodge Plantation, LLC and Phillips C. Witter," the
Court granted Witter's Voluntary Motion to Dismiss without Prejudice on March 23, 2015 and dismissed all claims
by Witter against all defendants.  R. Doc. 56.  Thus, Cedar Lodge is the only remaining named plaintiff in this matter.

[3] R. Docs. 111 & 116.

[4] R. Doc. 117.

[5] R. Doc. 105.

[6] R. Doc. 50, ¶ 9.

directly adjacent to and abutting Fairway View Apartments (the "Apartments").[7]  The Apartments are purportedly owned by CSHV Fairway View I, LLC and CSHV Fairway View II, LLC[8] and managed by Campus Advantage, Inc.[9]  STS is alleged to be the service contractor for the Apartments' wastewater lift station and water treatment system.[10]  Plaintiff alleges that as a result of defendants' actions, Plaintiff's property has suffered contamination of, *inter alia*, waterways and groundwater and soil, which has caused the property to be unsuitable for use, development, and/or sale.[11]

This case is assigned for a jury trial (second setting) on January 17-20, 2017 with a final pretrial conference scheduled for September 15, 2016.[12]  Per this Court's Amended Scheduling Order, all fact discovery was to be completed by December 31, 2015.[13]  STS alleges that despite the December 31, 2015 discovery deadline, Plaintiff submitted Supplemental Disclosures on or around March 17, 2016 listing three new fact witnesses: Jeffrey C. Spurlock, Janice Stelly, and Greg Healing.[14]

STS moves to strike these three witnesses pursuant to Fed. R. Civ. P. 37 and contends that no good reason exists for Plaintiff's late disclosure.[15]  In response, Plaintiff asserts that it did not learn of the existence of these three witnesses until after expiration of the discovery deadline, "when one witness introduced himself to the Plaintiffs' expert to complain about the sewer

---

[7] R. Doc. 50, ¶ 2.

[8] R. Doc. 50, ¶ 5.

[9] R. Doc. 50, ¶ 6.

[10] R. Doc. 50, ¶ 7.

[11] R. Doc. 50, ¶ 20.

[12] R. Doc. 79.

[13] R. Doc. 79.

[14] *See*, R. Doc. 105-2.

[15] R. Doc. 105-1, p. 3.

overflow problem."[16]  Plaintiff further argues that defendants failed to disclose the identity of these witnesses, and that inclusion of the three witnesses would be harmless.[17]

## II.      Law and Analysis

Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  The decision to strike a late-designated witness is within the discretion of the court.  *See*, *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).  "The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless."  *Drechsel v. Liberty Mut. Ins. Co.*, 2015 WL 7067793, at *2 (N.D. Tex. Nov. 12, 2015) (citing *Sightlines, Inc. v. La. Leadership Institute*, 2015 WL 77671, at *1 (M.D. La. Jan. 6, 2015); *In re Sambrano*, 440 B.R. 702, 707 (Bankr. W.D. Tex. 2010)).

The Fifth Circuit reviews a district court's "exercise of discretion to exclude evidence that was not properly designated by considering the following four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)).  *See also*, *Stumbaugh v. American Commercial Lines, LLC*, 2009 WL 2922312 (E.D. La. Sept. 9, 2009) (analyzing ability of fact witness not specifically identified

---

[16] R. Doc. 107, p. 1.  Plaintiff's position is supported by the affidavit of Mr. Hunter Bertrand, an attorney previously enrolled as counsel for Plaintiff in this suit.  R. Doc. 107-4.  Mr. Bertrand states that during a January 8, 2016 inspection of the Apartments property, Mr. Spurlock introduced himself and "told us it was a good thing that the experts were checking the sewage system because it had been discharging sewage backflow when it rains."  R. Doc. 107-4, ¶ 5.

[17] *See*, R. Doc. 107, pp. 5-8.

on party's witness list to testify at trial based on *Geiserman* factors). "[C]ourts have held that a failure to disclose a witness or evidence is "substantially justified" under Rule 37(c) where the disclosing party had no knowledge of the person or evidence until after the discovery deadline has passed." *Drechsel v. Liberty Mut. Ins. Co.*, 2015 WL 7067793, at *2 (N.D. Tex. Nov. 12, 2015) (citing *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 661 (Bankr. S.D. Tex. 2009); *Silchia v. MCI Telecomms. Corp.*, 942 F. Supp. 1369, 1377 (D. Colo. 1996)).

Plaintiff contends that its failure to disclose Mr. Spurlock, Ms. Stelly, and Mr. Healing as witnesses prior to the December 31, 2015 discovery deadline was substantially justified because it did not know of the existence of these witnesses until after that deadline expired. Specifically, Plaintiff explains that "Mr. Spurlock only became known to the Plaintiffs recently when a team of Plaintiffs' experts traveled to the Defendants' apartment complex on January 8, 2016 for a video inspection of the property, during which Mr. Spurlock noticed the activity and approached the group with new information."[18] Plaintiff states that after learning about Mr. Spurlock, it sought a written statement from him, and once it obtained Mr. Spurlock's affidavit, provided defendants with amended and supplemental answers to interrogatories and provided a supplemental disclosure under Fed. R. Civ. P. 26(a)(1).[19] Further, Plaintiff argues that although Fairway View knew that Mr. Spurlock witnessed the sewer problem at issue in this litigation, Fairway View never identified Mr. Spurlock in response to Plaintiff's request for the identity of any person with knowledge of the factual matters relating to this action.[20] Finally, Plaintiff asserts that the testimony of these

---

[18] R. Doc. 107, p. 2.

[19] R. Doc. 107, p. 3. *See also*, R. Doc. 107-4 (affidavit of Mr. Hunter Bertrand). In his affidavit, Mr. Spurlock states that he resides at the Apartments and has "witnessed the discharge of sewage and other contaminants from a manhole on the property on multiple occasions…." R. Doc. 105-2, ¶ 3. Mr. Spurlock also states that he is "aware of at least two other witnesses who will corroborate this testimony: Janice Stelly, who lives with me at the same address, and Greg Healing, who resided in a neighboring unit during the applicable time period." R. Doc. 105-2, ¶ 6.

[20] R. Doc. 117.

witnesses will only serve to clarify an already-identified issue in the case, rather than raising a new issue, would not require resetting the trial date, and would not prejudice STS's environmental expert because that expert has already incorporated the witness's affidavit into his report.[21]

In response, both STS and Fairway View assert that Plaintiff had (or should have had) knowledge of these witnesses well before the December 2015 deadline based on Fairway View's production of service requests from the Apartments.[22]  Those service requests include a request from Janice Stelly.[23]  Ms. Stelly lives in the same unit as Mr. Spurlock.[24]  The service request notes the "issue location" as "bathroom" and "issue description" as "toilet, toilet plugged/overflows."[25] In the "other actions performed" section of the request, handwritten notes state "building backing up call Roto Rooter."[26]  STS and Fairway View contend that this service request was sufficient to identify Ms. Stelly as a witness and that Plaintiff chose not to pursue this line of discovery.[27]

The Court does not read Ms. Stelly's service request as providing Plaintiff with sufficient notice that Ms. Stelly (or her unidentified co-tenant, Mr. Spurlock, or neighbor, Mr. Healing) would have knowledge of the alleged sewer problem at the Apartments.[28]  Rather, the Court finds

---

[21] R. Doc. 107, pp. 7-8 & R. Doc. 117, p. 4.

[22] *See*, R. Doc. 111, pp. 1-2 and R. Doc. 116, pp. 1-2.

[23] R. Doc. 116-5.

[24] R. Doc. 105-2, ¶ 6.

[25] R. Doc. 116-5.

[26] R. Doc. 116-5.

[27] *See*, R. Doc. 111, p. 2 ("Thus, Fairway View produced, and Plaintiff Cedar Lodge had access to, Ms. Stelly's identity and service request as early as April 2015.  Nevertheless, plaintiff chose not to serve any subpoenas on either of these individuals or otherwise request information concerning Ms. Stelly's service request or any of the other remaining service requests from other tenants."); R. Doc. 116, p. 4 ("The produced documents include a service request from Janice Stelly, in Unit 67, which is Bates labeled FAIRWAY VIEW 0002886 and dated December 5, 2013.  That service request noted the "Building Backing Up Call Roto Rooter."  Jeffrey Spurlock lives in Unit 67 and has attested in his Affidavit, that Ms. Stelly lives with him in that same unit.  Thus, Fairway View produced, and Cedar Lodge had access to Ms. Stelly's identity and service request as early as April 2015….").

[28] As argued by Plaintiff, "[b]ecause the plaintiff did not have any reasonable appreciation that a resident's clogged toilet means that her boyfriend witnessed an unrelated sewer problem elsewhere at the complex years later, this single

5

that Plaintiff did not have knowledge of these three potential witnesses until the January 8, 2016 inspection, when Mr. Spurlock introduced himself.[29]  Moreover, the Court agrees that the addition of Mr. Spurlock, Ms. Stelly, and Mr. Healing will not upset the current trial date and "would not cause any dramatic shift of major trial issues because it is not evidence of a different issue, rather it is…evidence that…clarifies an already-identified issue."[30]  Defendants do not contest Plaintiff's assertion that defendant's environmental expert has already incorporated Mr. Spurlock's affidavit into his Expert Opinion Report.[31]  Finally, Plaintiffs apparently do not oppose a reopening of discovery for the limited purpose of allowing the depositions of Mr. Spurlock, Ms. Stelly, and Mr. Healing.[32]  Under such circumstances, Plaintiff's failure to list Mr. Spurlock, Ms. Stelly, and Mr. Healing as witnesses prior to the December 2015 discovery deadline was substantially justified.

### III.   Conclusion

For the reasons set forth herein, the Motion to Strike[33] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants are granted 60 days from the date of the signing of this Ruling to take the depositions of Mr. Spurlock, Ms. Stelly, and Mr. Healing.

Signed in Baton Rouge, Louisiana, on June 28, 2016.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

page document in the sea of clogged toilet service records produced does not somehow undermine the plaintiff's claim that the addition of these witnesses is 'substantially justified.'"  R. Doc. 117, p. 3.

[29] R. Doc. 107-4, ¶ 4.

[30] R. Doc. 107, p. 7.

[31] R. Doc. 107, pp. 7-8.

[32] R. Doc. 107, p. 8 ("[I]f this Court allows the fact witnesses' evidence, and allows the Defendants to depose the witnesses, it would cure any prejudice allegeJune 28, 2016d.  The trial is not scheduled until January 2017, and there is no need to continue the trial date.  The Defendants have adequate opportunity to challenge the witnesses' testimony.").

[33] R. Doc. 105.