UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CEDAR LODGE PLANTATION, LLC, ET AL. | CIVIL ACTION |
| VERSUS | |
| CSHV FAIRWAY VIEW I, LLC, ET AL. | NO.: 13-00129-BAJ-EWD |

## RULING AND ORDER

Before the Court are a **Motion in Limine (Doc. 184)** filed by CSHV Fairway View I, CSHV Fairway View II, and Campus Advantage, Inc. (collectively "Fairway View"), and a **Motion to Amend Pretrial Order (Doc. 201)** filed by Cedar Lodge Plantation, LLC (hereinafter "Cedar Lodge"). The parties filed responses (Docs. 191, 212), replies (Docs. 208, 221), and a sur-reply (Doc. 215) where applicable. Oral argument on the motions was held on March 2, 2017. (*See* Docs. 257, 260). The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.  BACKGROUND

Cedar Lodge initiated this action against Fairway View on January 29, 2013, in the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, alleging that Fairway View, among other defendants, was "responsible for the continuous, unpermitted discharge of harmful or hazardous substances, pollutants and/or contaminants, including but not limited to raw sewage onto Plaintiffs' property."[1] (*See* Doc. 1; Doc. 50 at ¶ 9). Cedar Lodge sought damages

---

[1] The initial action was filed as a class action and named several additional defendants, including Sewer Treatment Systems, LLC ("STS"), the service contractor for Fairway View's wastewater lift station, and several liability insurance companies. (*See* Doc. 1). Over the course of these proceedings,

1

resulting from Fairway View's allegedly negligent actions, and specifically sought remediation of the property and damages resulting from lost business opportunity, loss of use and enjoyment, and lost business income. (Doc. 50 at ¶ 25).

During the course of this litigation, the parties submitted several written pretrial motions concerning evidence and causes of action. Each party's motions are addressed in turn below.

## II. DISCUSSION

### A. MOTION *IN LIMINE* TO LIMIT CLAIMS IN THE JOINT PRETRIAL ORDER

In its motion, Fairway View requests that the Court limit the claims Cedar Lodge may assert at trial to those included in its Second Amended Complaint, which Fairway View argues pleads a claim solely in negligence.[2] (*See* Doc. 50; Doc. 184-1 at pp. 3 – 9). Fairway View avers that Cedar Lodge's attempt to add new causes of action, including claims for trespass, nuisance, strict liability, and civil fruits, so late in the litigation should not be permitted because Fairway View was given no notice of the new claims before the deadline for dispositive motions and discovery passed. (Doc. 184-1 at p. 3). Further, Fairway View asserts that because Cedar Lodge only specified two forms of damages—remediation of the pond and a lost business opportunity—in response to written discovery requests and in its corporate

---

Cedar Lodge has abandoned all class action allegations, Philip Witter's individual claims against all parties, and the Court disposed of all claims against STS on summary judgment. (Doc. 219).

[2] In the motion, Fairway View also reserved its right to move to exclude Greg Healing, one of Cedar Lodge's fact witnesses, from testifying in the event he refused to attend a deposition. (*See* Doc. 184-1 at pp. 9 – 10). Mr. Healing has since been deposed, rendering this request moot.

2

deposition, Cedar Lodge should be precluded from now seeking new forms of recovery, to wit, (1) the payment of civil fruits and unjust enrichment, and (2) a permanent injunction in any form. (Doc. 184-1 at p. 4). Because Fairway View has not had an opportunity to obtain discovery regarding the newly pleaded causes of action and damages sought, Fairway View argues that it would be substantially prejudiced if Cedar Lodge were allowed to pursue those claims at trial. (Doc. 184-1 at p. 4).

In response, Cedar Lodge first argues that the instant motion is an attempt by Fairway View to file a dispositive motion after the deadline for filing such motions has passed.[3] (Doc. 191 at p. 2). Cedar Lodge further counters that Fairway View would suffer no real surprise or prejudice by the augmentation of its claims because (1) Fairway View received notice of Cedar Lodge's intent to pursue additional claims two months before the Pretrial Order was due and six months before trial in this matter was originally scheduled to begin, and thus the alleged "change" in claims was not made on the eve of trial; and (2) the same facts at issue in all the claims have been litigated for three years and the claims are all based on the same witnesses who will already be testifying. (Doc. 191 at p. 13).

At the outset, the Court agrees that the requests in Fairway View's motion present assertions and arguments that would normally be addressed in a dispositive motion.[4] Although Fairway View's motion has a dispositive motion tint, the

---

[3] The Amended Scheduling Order lists July 1, 2016 as the deadline to file dispositive motions. (*See* Doc. 125).

[4] Fairway View suggests that it filed the motion defensively to comply with the upcoming motion *in limine* deadline as set in the Scheduling Order (Doc. 174) and "in the event that Cedar Lodge attempts to include new claims in its Pre-Trial Order submission. (Doc. 184 at p. 1).

3

assertions presented therein were previously unavailable to Fairway View, as a review of the pleadings reveals—and as Fairway View has asserted—that Cedar Lodge continuously asserted that its claims derived from the allegedly *negligent* (and not *tortious*) actions of Fairway View. In any event, the Court will consider Fairway View's motion to be a preemptive motion to amend the Joint Pretrial Order (Doc. 188) to preclude the assertion of additional claims that Fairway View reasonably predicted might be included—and that ultimately were included—therein.[5]

1. Additional Causes of Action

The Federal Rules of Civil Procedure provide that "[t]he court may modify the [pretrial] order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Additionally, the United States Court of Appeals for the Fifth Circuit has held that district courts have discretion in such matters and can allow amendment of the pretrial order "where no surprise or prejudice to the opposing party results." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 346 (5th Cir. 2002). Nevertheless, as a general rule, "a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'" Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1219 (3d ed.).

With this standard in mind, and after reviewing the pleadings and the parties'

---

[5] This characterization of Fairway View's motion is further appropriate as Cedar Lodge disclosed its intent to bring these claims in the Pretrial Order inserts it provided to Fairway View before the Court continued the Pretrial Order deadline. (*See* Doc. 184-1 at p. 3, n. 8).

4

arguments, the Court agrees with Fairway View's assertions that the inclusion of claims for trespass, strict liability, and civil fruits would result in prejudice and, because of the stage of litigation, would necessarily delay the proceedings in this matter.[6] That is, although Cedar Lodge maintains that evidence in support of other non-negligent, tort-based claims—including trespass, strict liability, and civil fruits—are present in the record and derive from facts and arguments that have been litigated for several years, such representations are not sufficient to negate allegations of potential prejudice offered by Fairway View, as they fail to acknowledge that each claim has additional elements that themselves warrant additional discovery. Additionally, because the Court will not reopen discovery, this case is in a procedural posture such that the addition of these claims would substantially prejudice Fairway View.[7]

---

[6] Fairway View does not make specific assertions of prejudice concerning Cedar Lodge's proposed nuisance claim, and any such assertions would be unavailing, as Fairway View addressed this claim in its motion for summary judgment. (*See* Doc. 121-1 at p. 5). Further, the elements of a nuisance claim and a general negligence claim substantially overlap, such that several courts address both claims concurrently. Cedar Lodge's ability to assert—and Fairway View's ability to defend—the proposed nuisance claim have developed over the course of this litigation, and Fairway View would not be prejudiced by allowing Cedar Lodge to pursue this claim.

[7] Both parties cite to *Palace Exploration Co. v. Petroleum Development Co.*, 316 F.3d 1110 (10th Cir. 2003) in support of their respective positions about the effect that allowing these claims to proceed might have on Fairway View's ability to defend this case with minimal prejudice. In *Palace*, the United States Court of Appeals for the Tenth Circuit found that the district court abused its discretion by failing to allow a new theory of recovery that was not pled in the original complaint. However, the court found especially egregious that the district court denied the new claim despite the district court's reopening discovery (on an unlimited basis) and not allowing an amendment based on facts unearthed during this extension. Here, the Court did extend discovery for the limited purpose of allowing for the deposition of specific fact witnesses. (*See* Doc. 170). The Pretrial Order states that Gregory Healing, Jeffrey Spurlock and Janice Stelly—all current or former residents of the Fairway View apartments who were deposed pursuant to that extension—will "testify as to [their] knowledge of the Fairway View Apartments sanitary sewage system, and overflows related with that system." (Doc. 188 at p. 44). Further, Cedar Lodge represents in its memorandum in opposition to Fairway View's motion that these witnesses will testify that raw sewage has been discharged from a manhole in an eight inch fountain of raw sewage "straight into the ditch leading to the Cedar Lodge property, and that this

Regarding a claim for civil trespass, generally a defendant may not be held liable for trespass "in the absence of evidence that the trespass resulted from some *intentional* act taken by the defendant." *Terre Aux Boeufs Land Co, Inc. v. J.R. Gray Barge Co.*, 2000-2754, *13-14 (La. App. 4 Cir. 11/14/01); 803 So.2d 86, at 96.[8] In its briefing and at oral argument, Fairway View maintained its inability to conduct targeted discovery on whether any alleged discharges were intentional. (*See* Doc. 184-1 at p. 6). Additionally, and as Fairway View correctly notes, Louisiana law recognizes traditional strict liability—that is, liability without a determination of fault—in a limited number of circumstances, namely, for pile driving and the use of explosives. Thus, to the extent Cedar Lodge seeks to recover under a traditional theory of strict liability, such a claim is disallowed as there has been no evidence of its applicability and Fairway View has had no opportunity to conduct discovery related to its potential applicability.

Additionally, the Court will not allow Cedar Lodge to pursue a cause of action for civil fruits, primarily because, considering the evidence currently before the Court, the claim is unavailable under Louisiana law. Cedar Lodge maintains that it is

---

went on for hours." (Doc. 191 at p. 8). However, contrary to Cedar Lodge's assertion, this testimony does not lend itself to adding new claims for trespass, civil fruits, or strict liability, especially at this late stage. Cedar Lodge knew the nature of these witness's testimony before their scheduled depositions and cannot now seek to adjust the focus of this case based on preexisting knowledge about later-obtained testimony. Thus, Cedar Lodge's reliance on *Palace* is unavailing.

[8] There have been very few instances in which Louisiana courts have not explicitly identified civil trespass as a tort requiring a showing of intent. *See Terre Aux Boeufs Land Co., Inc.*, 803 So.2d 86, 96 (citing *Phillips v. Town of Many*, 538 So.2d 745 (La. App. 3d Cir. 1989); *Brown v. Bedsole*, 447 So.2d 1177 (La. App. 3 Cir. 1984)). However, the general rule remains that intent is an important element in a claim for civil trespass.

6

entitled to civil fruits because Fairway View has stored contaminants on Cedar Lodge's property, allegedly deriving substantial economic benefit from doing so. (Doc. 188 at p. 5). However, as Fairway View properly argues, Louisiana courts have held that a cause of action for civil fruits is unavailable in cases like this, namely, where nothing was produced by or derived from the property as a result of the alleged storage or disposal of the waste.[9] Further, even assuming Fairway View did derive an economic benefit from storing waste on Cedar Lodge's property, Cedar Lodge has not pointed to any evidence to that effect. Accordingly, Cedar Lodge may not now include a claim for civil fruits in the pretrial order.

Finally, Fairway View objects to Cedar Lodge now seeking to recover under the theory of unjust enrichment. (*See* Doc. 184-1 at p. 4). After reviewing the pleadings, the Court holds that Cedar Lodge may not now seek damages for unjust enrichment, as the nature of this case makes clear that Cedar Lodge has no claim for such recovery under Louisiana law. Louisiana Civil Code article 2298 provides that "[unjust enrichment] is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." Under this provision,

---

[9] Louisiana Civil Code article 486 provides that "[a] possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses." Louisiana Civil Code article 551 defines fruits as "things that are produced by or derived from another thing without diminution of its substance," and civil fruits as "revenues derived from another thing, such as rentals, interest, and certain corporate distributions." The Louisiana Court of Appeal for the Second Circuit has held that economic benefits derived from storage of wastes on a plaintiff's property without permission are not "civil fruits" as defined in the Civil Code because nothing is "produced by or derived from the property as a result of the storage/disposal of the waste," and there are "no revenues, such as rentals, interest or a corporate distribution, derived from the property by virtue of the storage/disposal of the waste." *Wagoner v. Chevron USA Inc.*, 45,507, p. 15 (La. App. 2 Cir. 8/18/10); 55 So.3d 12, 27; *Alford v. Anadarko E&P Onshore LLC*, 2014 WL 1612454, *19 (E.D. La. 4/22/2014). The Court finds the analysis in *Wagoner* persuasive and applicable to the facts of this case. Accordingly, the Court holds that Cedar Lodge may not now include a claim for recovery of civil fruits.

when a remedy at law is available to redress an injury or the law precludes recovery, a plaintiff may not pursue an action for unjust enrichment to defeat the purpose of the rule of law applicable to the dispute. *See Edmonston v. A-Second Mortgage Co.*, 289 So.2d 116, 122 (La. 1974). Consistent with this principle of law, Cedar Lodge cannot assert a claim for unjust enrichment in the face of several alternative causes of action, even if recovery is ultimately unavailable. *See Mongrue v. Monsanto Co.*, 1999 WL 970354 at *5 (E.D. La. 1999) ("Unjust enrichment is not an appropriate cause of action because no gap in the law exists that prevents plaintiffs from pursuing a remedy at law for their alleged injury."), *aff'd by Mongrue v. Monsanto Co.*, 249 F.3d 422 (5th Cir. 2001).

2. Additional Forms of Relief

Fairway View also objects to Cedar Lodge's attempt to recover "new forms of relief not previously identified in any pleading or discovery response" including, among other things, a permanent injunction, loss of use and enjoyment of its property, and a diminution in value of the property. (Doc. 184-1 at p. 4). Fairway View maintains that such a limitation is necessary because "Cedar Lodge has itemized only two forms of alleged damage: remediation of the Pond and the loss of a business opportunity" throughout this litigation, and all other forms of recovery should be precluded. (*Id.*).

The Court will not at this time limit the availability of any form of recovery to which Cedar Lodge may be entitled to the extent evidence adduced at trial supports the availability of such damages. The Fifth Circuit has recognized that Rule 54(c)

authorizes district courts to grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, but only where relief is otherwise legally permitted. Accordingly, the Fifth Circuit has held that "[a] party may be awarded the damages established by the pleadings or the facts proven at trial" even if the damages sought were not specifically demanded in the complaint. *Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975). Further, Federal Rule of Civil Procedure 54(c) counsels that courts "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." However, "[t]he discretion afforded by Rule 54(c) ... assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015); *see also Capital Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387, 390 (5th Cir. 1980) (courts must assure that the party against whom judgment is entered has sufficient advance notice and an adequate opportunity to demonstrate why additional relief should not be granted); *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251 (5th Cir. 2016).

Here, recovery for loss of use and enjoyment of property and a diminution in property value—in addition to the previously identified damages—were all included in Cedar Lodge's Second Amended Complaint, (*see* Doc. 50 at ¶ 25), and are all forms of relief to which Cedar Lodge *may* be entitled, depending on the nature of the evidence introduced at trial.[10] Accordingly, the Court will allow the jury to award any

---

[10] The Court notes that Cedar Lodge has offered no evidence related to the loss of use and enjoyment of its property separate from the lost business opportunity claim, which seems to be the primary basis

9

damages for which the law authorizes recovery to the extent Cedar Lodge offers proof that such damages are available. Further, and in accordance with Cedar Lodge's general prayer for relief, the Court will order injunctive relief consistent with evidence produced at trial and the jury's ultimate determination of liability. Fairway View may reassert its objection to these forms of relief at the conclusion of trial.

Accordingly, Fairway View's motion is **GRANTED IN PART** and **DENIED IN PART**. It is granted insofar as Cedar Lodge may not now assert in the Joint Pretrial Order claims for trespass, civil fruits, strict liability or unjust enrichment. It is denied insofar as the Court will not, ahead of trial, deny the availability of the specified damages to the extent Cedar Lodge may be entitled to them.

### B. CEDAR LODGE'S MOTION TO AMEND PRETRIAL ORDER

Cedar Lodge seeks to amend the Pretrial Order to add (1) the Louisiana Department of Health and Hospitals' ("DHH") responses to Cedar Lodge's public records request, (2) documents produced by defense expert Alexander Sheffield, and (3) objections to Fairway View's exhibits listed in the pretrial order. (Doc. 201). Regarding the DHH responses, Cedar Lodge asserts that the 28 exhibits are relevant to testimony that will be adduced at trial regarding a contamination incident on the Fairway View property. (Doc. 201 at p. 2). Specifically, Cedar Lodge hopes to disprove that certain of the Fairway View defendants (1) knew that their sewage system did not leak; (2) were prompt with repairs of the sewage system; and (3) adequately

---

upon which Cedar Lodge seeks relief related to the use of its property. (*See* Doc. 50 at ¶ 50). The availability of this claim—and thus the availability of damages related to this claim—is currently under review by the Court pursuant to Fairway View's Motion for Reconsideration (Doc. 225).

10

repaired the sewage system. (Doc. 201 at p. 3). Cedar Lodge also asserts that Fairway View's classification of communications with DHH as a "conscientious decision to inform DHH about a potential issue" is rebutted by the new evidence, which Cedar Lodge asserts clearly demonstrates that because DHH reached out to Fairway View regarding potential contamination, several aspects of Fairway View's representations on this point have been mischaracterized. (Doc. 201 at p. 3).

Fairway View objects primarily to the addition of the DHH exhibits, asserting that because Cedar Lodge knew about the incident described in the request well before it actually made the request, and because Cedar Lodge failed to inform Fairway View that it requested or received the DHH documents although it received the documents before the final pretrial order was due, they should not be included in the pretrial order. (Doc. 212 at p. 4).[11]

Under Fifth Circuit law, the district court's discretion to allow amendment or modification of a pretrial order is guided by the following factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010). The Court finds that several of these factors weigh against amending the pretrial order to include the DHH documents.

---

[11] In its opposition, Fairway View does not address Cedar Lodge's request to amend the Pretrial Order to include (1) documents produced by Alexander Sheffield and (2) objections to Fairway View's exhibits listed in the pretrial order. Accordingly, without objection and finding no separate basis upon which to exclude the documents, the portion of Cedar Lodge's motion requesting the inclusion of those documents is granted.

11

First, Cedar Lodge moved to append the DHH documents to the Joint Pretrial Order on November 22, 2016, six days before the final pretrial conference, without any sufficient justification for the delay although Cedar Lodge (1) requested the disputed documents 8 months after the December 31, 2015 discovery deadline and (2) had the documents in its possession for a month before the parties submitted their final pretrial order on October 31, 2016. Further, the purpose for which Cedar Lodge seeks to add the disputed documents do not bear directly on triable issues, namely, whether Fairway View's allegedly negligent conduct caused Cedar Lodge property damage for which legal relief is warranted. The Court notes that the law does not impose an obligation on litigants to inform an opposing party of a pending public records request. As such, Fairway View's assertion that it did not have an adequate opportunity to oppose Cedar Lodge's public records request is not availing. However, the Court finds that Fairway View was not apprised of the proposed documents with sufficient time before the pretrial conference to dispute their inclusion in the Pretrial Order before it became final.

Despite this, and to ensure consistency in the Court's rulings in this case, the Court will defer ruling on whether documents related to the DHH public records request may be added as exhibits to the Pretrial Order until such time as the Court rules on the admissibility of all evidence concerning post-January 29, 2013 discharges. (*See* Doc. 236).

However, the Court finds that there is no basis for excluding Dr. Sheffield's exhibits or Cedar Lodge's objections to certain of Fairway View's exhibits as listed in

the Pretrial Order. Accordingly, the proposed amendment to the pretrial order is **GRANTED IN PART AND DEFERRED IN PART**. It is granted insofar as Cedar Lodge may amend the Joint Pretrial Order to include: (1) documents produced by defense expert Alexander Sheffield, and (2) objections to Fairway View's exhibits listed in the pretrial order. The Court will, however, defer ruling on the admissibility of the DHH documents.

### III. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the **Motion in Limine (Doc. 184)** filed by Fairway View is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the **Motion to Amend Pretrial Order (Doc. 201)** filed by Cedar Lodge is **GRANTED IN PART AND DEFERRED IN PART**.

Baton Rouge, Louisiana, this 31st day of May, 2017.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA